IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

No. 15-0345

**FILED**
**June 3, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent

v.

JERRY DEEL,
Petitioner

Appeal from the Circuit Court of Mercer County
The Honorable Derek C. Swope, Judge
Criminal Case No. 04-F-300

REVERSED AND REMANDED

Submitted:  May 17, 2016
Filed: June 3, 2016

Steven K. Mancini, Esq.
Beckley, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Laura Young, Esq.
Deputy Attorney General
Julie Marie Blake, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

2. "Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W. Va. 292, 262 S.E.2d 885 (1980).

3. The supervised release statute, West Virginia Code § 62-12-26, provides for an additional penalty to be imposed upon a person who is convicted of any of the enumerated sex offenses set forth therein. Any retroactive application of the supervised release statute to an individual who committed any of the enumerated sex offenses prior to the effective date of the supervised release statute violates the constitutional prohibition against ex post facto laws set forth in article III, section 4 of the West Virginia Constitution and Article I, Section 10 of the United States Constitution.

4. In order to avoid the constitutional prohibition against ex post facto laws, West Virginia Code § 62-12-26 must not be applied to those individuals who committed any of the enumerated sex offenses set forth in the supervised release statute prior to the date the supervised release statute became effective regardless of any contrary language contained in West Virginia Code § 62-12-26.

5. "This Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error." Syl. Pt. 1, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998).

6. "Under the 'plain error' doctrine, 'waiver' of error must be distinguished from 'forfeiture' of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right–the failure to make timely assertion of the right–does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is 'plain.' To be 'plain,' the error must be 'clear' or 'obvious.'" Syl. Pt. 8. *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

7.      "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

8.      "An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect.  In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings."  Syl. Pt. 7, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

Workman, Justice:

This case is before the Court upon the appeal of the Petitioner, Jerry Deel, from the March 10, 2015, order of the Circuit Court of Mercer County, West Virginia, wherein the circuit court modified the Petitioner's probationary period to five years followed by twenty years of "intensive supervision as a sex offender." On appeal, the Petitioner argues that the circuit court erred in changing the original sentencing order by adding a term of supervised release.[1] Based upon a review of the parties' briefs, the appendix record, and all other matters before the Court, we notice plain error grounded in the application of the ex post facto clause found in both the West Virginia and United States Constitutions.[2] Accordingly, we reverse only that portion of the Petitioner's sentence wherein extended supervision for

---

[1]Given that we decide this case on the ex post facto issue discussed in greater detail *infra*, we need not address the Petitioner's assigned error.

[2]West Virginia Constitution, article III, section 4 provides as follows:

> The privilege of the writ of habeas corpus shall not be suspended. No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury. No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed.

Likewise, the United States Constitution, Article I, Section 10 provides, in pertinent part, "[n]o State shall . . . pass any . . . ex post facto Law . . . .

1

sex offenders as set forth in West Virginia Code § 62-12-26[3]

[3]The extended supervision for certain sex offenders statute ("supervised release statute") was first enacted in 2003. The 2003 version of the statute, which was in effect at the time of the Petitioner's conviction and imposition of his initial sentence, gave a circuit court discretion as to whether to impose any period of supervised release as follows:

> (a)  Notwithstanding any provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of section twelve [§ 61-8-12], article eight, chapter sixty-one of this code or a felony violation of the provisions of article eight-b [§§ 61-8B-1 et seq.], eight-c [§§ 61-8C-1 et seq.] or eight-d [§§ 61-8D-1 et seq.] of said chapter ***may***, *as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to fifty years*. The period of supervised release imposed by the provisions of this section shall begin upon the expiration of any period of probation, the expiration of any sentence of incarceration or the expiration of any period of parole supervision imposed or required of the person so convicted, whichever expires later.

(Emphasis added.)

In 2006, the Legislature amended the statute to require a mandatory period of extended supervised release as follows:

> (a) Notwithstanding any other provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of section twelve [§ 61-8-12], article eight, chapter sixty-one of this code or a felony violation of the provisions of article eight-b [§§ 61-8B-1 et seq.], eight-c [§§ 61-8C-1 et seq.] or eight-d [§§ 61-8D-1 et seq.] of said chapter ***shall***, *as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty of condition imposed by the court, a period of supervised release up to fifty years*: Provided, That the period of supervised release imposed by the court pursuant to this section for a defendant convicted

(continued...)

2

was imposed.

## I. FACTS

On October 13, 2004, an indictment was returned against the Petitioner.

According to the indictment, on September 21, 2001, the Petitioner was alleged to have

committed the offense of sexual abuse in the first degree, attempt to commit a felony of

sexual assault in the first degree, sexual assault in the first degree and sexual abuse by a

---

[3](...continued)
> after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, two thousand six, of a violation of sections three [§ 61-8B-3] or seven [§ 61-8B-7], article eight-b, chapter sixty-one of this code and sentenced pursuant to section nine-a [§61-8B-9a], article eight-b, chapter sixty-one of this code, shall be no less than ten years: Provided, however, That a defendant designated after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, two thousand six, as a sexually violent predator pursuant to the provisions of section two-a [§ 15-12-12a], article twelve, chapter fifteen of this code shall be subject, in addition to any other penalty or condition imposed by the court, to supervised release for life: Provided further, That, pursuant to the provisions of subsection (g) of this section, a court may modify, terminate or revoke any term of supervised release imposed pursuant to (a) of this section.

(Emphasis added).

We note that the statute was again amended in 2015 with the amendments effective May 26, 2015. Regardless of the effective date of any amendments to West Virginia Code § 62-12-26, the holdings today regarding the ex post facto clause apply. Consequently, for purposes of citing West Virginia Code § 62-12-26 within this opinion, we do not give any particular date with the supervised release statute.

3

custodian.[4] The crimes were alleged to have been perpetrated against the Petitioner's step-granddaughter.

On January 24, 2005, following a jury trial, the Petitioner was found guilty on all counts.[5] The circuit court held a sentencing hearing on August 5, 2005, and by order entered on October 10, 2005, the circuit court sentenced the Petitioner to the penitentiary as follows: an indeterminate term of not less than one nor more than five years for the conviction of sexual abuse in the first degree as set forth in Count I of the indictment; an indeterminate term of not less than one nor more than three years for the conviction of attempt to commit the felony of sexual assault in the first degree as set forth in Count II of the indictment; an indeterminate term of not less than fifteen nor more than thirty-five years for the conviction of sexual assault in the first degree as set forth in Count III of the indictment; and an indeterminate term of not less than ten nor more than twenty years for the conviction of sexual abuse by a custodian as set forth in Count IV of the indictment. The sentences were to run concurrent with one another.

The circuit court then suspended the imposition of the Petitioner's sentences

---

[4]There is no dispute that the offenses in the indictment fell within the purview of the enumerated sex offenses found in West Virginia Code § 62-12-26. *See supra* n.3.

[5]The Petitioner appealed his convictions to this Court and his petition for appeal was refused.

as to Counts I, II, and III of the Indictment only and further ordered that when the Petitioner was discharged from the penitentiary after serving the ten to twenty year sentence for his sexual abuse by a custodian conviction that he "shall be placed on probation for a period of ten (10) years" with the following conditions:

1. That the defendant pay his court costs within two (2) years of his release from incarceration or his driver's license will be subject to suspension;
2. That the defendant obey all laws;
3. That the defendant not use any alcohol/drugs, or have any in his possession, unless prescribed by a physician;
4. That the defendant be subject to random urinalysis;
5. That the defendant not associate with anyone who abuses drugs/alcohol or convicted felons;
6. That the defendant not frequent places where drugs/alcohol are served or used;
7. That the defendant not be around any children under the age of 18 years;
8. That the defendant register as a sexual offender;
9. That the defendant participate in sexual offender treatment.

The Petitioner was discharged from the State of West Virginia Division of Corrections due to the expiration of his sentence on January 24, 2015. According to the Petitioner, he registered as a sex offender and reported to the Mercer County Probation Office.

On March 2, 2015, the circuit court held a hearing to examine the previously

5

imposed probationary period. According to the appendix record,[6] the hearing took place due to a probation officer, who was going to supervise the Petitioner's term of probation, noticing that the sentencing order indicated that the Petitioner was to serve a ten-year term of probation. Two probation officers, the assistant prosecutor, the Petitioner and his counsel were present at this hearing. As indicated in the hearing transcript, Kimberly Moore, the Mercer County Adult Probation Officer, stated to the circuit court: "Your Honor, upon placing Mr. Deel on probation following discharge on January 24th I noticed that the Court order, the sentencing order that was prepared indicated that he was to be placed on probation for ten years." The circuit court immediately responded: "Which you can't do."[7] The circuit court questioned "what kind of extended supervision is he supposed to be on?" The circuit court later questioned "[i]sn't he also supposed to be on your supervision, too?" The Sex Offender Intensive Supervision Officer, Jennifer Lester, responded that he was. The court then questioned: "And haven't they already ruled in these cases that that's not ex post facto, that you know, that should have been done at the time? Right?" To which Ms. Moore responded: "Yes." The prosecutor then qualified: "Well, at the time, Your Honor, I believe it [referring to the supervised release statute] was zero to fifty years and then my understanding, it got modified in about 2008 to be the minimum ten years supervision, up to

_____

[6]Contrary to the circuit court's March 10, 2015, order that the hearing was "upon defendant's motion to modify probation[,]"no motion was made by the Petitioner regarding his probation either in writing or orally at this hearing.

[7]Pursuant to West Virginia Code § 62-12-11 (2014) the "period of probation together with any extension thereof shall not exceed five years."

6

fifty." The court responded: "Well, if it isn't ex post facto, it isn't ex post facto, right?" The prosecutor then suggested that the court sentence the Petitioner to five years probation and then five years supervised release following that, making the total ten years. The circuit court, however, felt that it could not do that and indicated that the 2008 statute controlled.

According to the hearing transcript, the circuit court proceeded to probate the Petitioner on the balance of the fifteen to thirty-five year sentence for sexual assault in the first degree and placed him on probation for a period of five years. Then, the circuit court placed the Petitioner on "extended supervision for twenty years." There was no objection by the Petitioner to this sentence until near the end of the hearing. At that time, the Petitioner's counsel stated the following to the circuit court: "I look at this a little bit differently. In that Judge Frazier[8] had the authority to sentence him to the supervised probation from zero to fifty and in that he didn't, I believe that he sentenced him to zero." (Footnote added). The circuit court responded: "Go to the Supreme Court." The Petitioner's counsel then argued: "In addition, I just wanted to mention – I request that it be five years rather than twenty years." The circuit court again responded: "Denied. Go to the Supreme Court."

On March 10, 2015, the circuit court entered its order memorializing what

---

[8]Judge Frazier was the trial judge who first sentenced the Petitioner.

transpired at the second sentencing hearing wherein the Petitioner's probationary period was "modified to five (5) years followed by twenty (20) years of intensive supervision as a sex offender." The instant appeal followed from this order.

## II.  STANDARD OF REVIEW

This case is an appeal from a sentencing order. As we previously held in syllabus point one of *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997), "[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." *Accord* Syl. Pt. 1, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011). With this standard in mind, we proceed with an examination of the issue before us.

## II.  DISCUSSION

The critical and decisive issue in this case, which is grounded in the application of the ex post facto clauses of the West Virginia and United States Constitutions, focuses upon the imposition of a twenty-year period of supervised release by the circuit court upon the Petitioner. At the time the Petitioner committed the offenses for which he was convicted in September of 2001, the supervised release statute, West Virginia Code § 61-12-26, had not been enacted. As matter of fact, the supervised release statute was not enacted by the Legislature until 2003 almost two years after the offenses charged occurred. The Petitioner

8

did not make any argument regarding his constitutional rights under the ex post facto clause when it came up during the second hearing before the circuit court. Further, the Petitioner states in his brief before this Court that he is not making a due process or an ex post facto argument. Specifically, the Petitioner, relying upon this Court's decision in *Hensler v. Cross*, 210 W. Va. 530, 558 S.E.2d 330 (2001),[9] "acknowledges that the requirements of sex-offender supervision and sex-offender registration are civil in nature and can therefore be applied retroactively." In turn, the State recognizes the Petitioner's concession as follows: "The petitioner acknowledges that supervised release is civil in nature (as is sex offender registration) and can be applied retroactively." According to the State, the final sentence that was imposed upon the Petitioner is "within legal limits, and not based on any impermissible factor and should not be reviewed."

The parties' arguments or concessions that the ex post facto issue had already been resolved and the ex post facto law does not apply to West Virginia Code § 62-12-26 illustrate a grave misconception concerning ex post facto law and its application to the supervised release statute. The fallacy that exists concerning the supervised release statute emanates first from the notion that supervised release is civil and regulatory in nature like the Sex Offender Registration Act, found in West Virginia Code §§ 15-12-1 to -10 (2014). It also stems from the language of the supervised release statute itself. *See* W. Va. Code § 62-

---

[9]*See* discussion *infra* n.11.

9

12-26. We must rectify this misapplication of the law because it has so permeated our supervised release law that even this Court has issued two memo decisions,[10] which are incorrect in the manner in which we examined ex post facto challenges to West Virginia Code § 62-12-26.

Our discussion begins with this fundamental precept of ex post facto doctrine: "Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." Syl. pt. 1, *Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980); *see Collins v. Youngblood*, 497 U.S. 37, 42 (1990) ("'It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*.'"). We recently reiterated this tenet of ex post facto law in syllabus point twelve of *State v. Shingleton*, ___ W. Va. ___, ___S.E.2d___, 2016 WL 1192921 (W. Va. March 24, 2016):

---

[10]*See State v. Howard C.*, No. 14-0485, 2015 WL 5125834 (W. Va. Aug. 31, 2015) (memorandum decision)*; State v. Payne*, No. 11-0825, 2012 WL 2892245 (W. Va. Feb. 13, 2012) (memorandum decision).

"*When a criminal defendant is convicted of a crime and the penal statute defining the elements of the crime and prescribing the punishment therefor is repealed or amended after his/her conviction of the crime but before he/she has been sentenced therefor, the sentencing court shall apply the penalties imposed by the statute in effect at the time of the offense, except where the amended penal statute provides for lesser penalties*. If the amended penal statute provides lesser penalties for the same conduct proscribed by the statute in effect at the time of the offense, the defendant shall have an opportunity to elect under which statute he/she wishes to be sentenced, consistent with the statutory mandate contained in W. Va. Code § 2-2-8 (1923) (Repl. Vol. 1994) and our prior directive set forth in Syllabus point 2 of *State ex rel. Arbogast v. Mohn*, 164 W.Va. 6, 260 S.E.2d 820 (1979)." Syl. Pt. 6, *State v. Easton*, 203 W.Va. 631, 510 S.E.2d 465 (1998).

(emphasis added); *see also Shingleton*, ___ W. Va. at ___, ___ S.E.2d at ___, 2016 WL 1192921 at *2, Syl. Pt. 13, in part (holding, in part, that "*[t]he statutory penalty in effect at the time of a defendant's criminal conduct shall be applied to the defendant's conviction(s).*")
 (emphasis added).

In accordance with the principles of ex post facto law, if the imposition of an extended period of supervised release is a criminal, punitive penalty,[11] then the application

---

[11]Conversely, in syllabus point five of *Hensler*, we held that "[t]he Sex Offender Registration Act, W. Va. Code §§ 15-12-1 to 10, is a regulatory statute which does not violate the prohibition against *ex post facto* laws." 210 W. Va. at 531, 558 S.E.2d at 331, Syl. Pt. 5; *see State ex rel. Collins v. Bedell*, 194 W. Va. 390, 400 n.7, 460 S.E.2d 636, 646 n.7 (1995) (providing that "*ex post facto* principle is applicable only in criminal matters. *See Tanner v. Workers' Compensation Comm'r*, 176 W. Va. 427, 430, 345 S.E.2d 29, 32 (1986)."); *see also* Syl. Pt. 5, *Haislop v. Edgell*, 215 W. Va. 88, 593 S.E.2d 839 (2003) (holding that "[t]he application of W. Va. Code § 15-12-4 (2000), which requires life
(continued...)

11

of the statute to a defendant could violate a defendant's constitutional rights under the ex post facto clause. *See Adkins*, 164 W. Va. at 292, 262 S.E.2d at 885, Syl. Pt. 1. In *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011), this Court in addressing several constitutional challenges[12] to the supervised release statute determined that "[f]undamentally, the statute provides that a court impose a period of extended supervision as part of the criminal sentence for certain specified offenses, and sets forth the manner in which the supervision is to be administered and enforced." *Id.* at 414, 710 S.E.2d at 105. Further, we noted that "[t]he general premise clearly states the intent of the Legislature that the *sentence imposed* for certain felony offenses must *include the additional penalty* of a period of supervised release of up to fifty years." *Id.* Finally, we decided that "*[t]he imposition of the legislatively mandated additional punishment of a period of supervised release [i]s an inherent part of the sentencing scheme for certain offenses* enumerated in West Virginia Code § 62-12-26

_____

[11](...continued)
registration for certain sexual offenders, or W. Va. Code § 15-12-5 (2001), which allows for public dissemination of certain information about life registrants, to individuals who were convicted before the Legislature added these requirements to the Sex Offender Registration Act does not violate the *ex post facto* clause of the West Virginia Constitution[]" as it is regulatory and not punitive.).

[12]The constitutional challenges in *James* were predicated upon the cruel and unusual punishment clause as set forth in the Eighth Amendment to the United States Constitution and article III, section 5 of the West Virginia Constitution, the procedural due process clause and right to a jury trial set forth in the Fifth and Sixth Amendments to the United States Constitution and article III, section 10 of the West Virginia Constitution, and the double jeopardy clause as set forth in Amendment V to the United States Constitution and article III, section 5 of the West Virginia Constitution. *See* 227 W. Va. at 102, 710 S.E.2d at 411. There was no ex post facto challenge in *James*.

(2009)," in determining that the statute, on its face, did not violate the double jeopardy provisions in either the United States Constitution or the West Virginia Constitution. *See id.* at 411, 710 S.E.2d at 102, Syl. Pt. 11, in part (emphasis added).

Given our recognition in *James* of the punitive nature of the extended supervised release statute, we now hold that the supervised release statute, West Virginia Code § 62-12-26, provides for an additional penalty to be imposed upon a person who committed of any of the enumerated sex offenses set forth therein. Any retroactive application of the supervised release statute to an individual who committed any of the enumerated sex offenses prior to the effective date of the supervised release statute violates the constitutional prohibition against ex post facto laws set forth in article III, section 4 of the West Virginia Constitution and Article I, Section 10 of the United States Constitution.

Consequently, based upon the foregoing, we now need to correct our erroneous application of ex post facto law concerning the extended supervised release statute that exists in memorandum decisions issued by this Court. We address these memorandum decisions in the context of the law set forth in *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014). In *McKinley*, we held in syllabus point four that "[m]emorandum decisions are decisions by the court that are not signed, do not contain a Syllabus by the Court, and are not published." *Id.* at 146, 764 S.E.2d at 306, Syl. Pt. 4. We further held in syllabus point five

13

that "[w]hile memorandum decisions may be cited as legal authority, and are legal precedent, their value as precedent is necessarily more limited; where a conflict exists between a published opinion and a memorandum decision, the published opinion controls." *Id.*, Syl. Pt. 5.

First, in *State v. Payne*, No. 11-0825, 2012 WL 2892245 (W. Va. Feb. 13, 2012) (memorandum decision), we restated the State's argument concerning West Virginia Code § 62-12-26 that "*[e]x post facto* principles do not apply because the intent of the statute is not punishment, but rather supervision and regulation." *Id*. at *2. The State's argument is incorrect and we now disavow it.[13]

Next, in *State v. Howard C.*, No. 14-0485, 2015 WL 5125834 (W. Va. Aug. 31, 2015) (memorandum decision), the petitioner challenged the application of the extended supervision statute to him, because the requirements changed effective October 1, 2006, "well beyond the crime's commission in 1999." *Id*. at *3. Consequently, the petitioner argued that the imposition of the extended supervision statute violated his rights under the ex post facto clause of the United States Constitution and the West Virginia Constitution. We rejected the petitioner's argument based upon the following:

---

[13]In *Payne*, we simply restated an erroneous argument made by the State. Because the case did not turn either on the incorrect argument or any application of ex post facto law, we find it unnecessary to overrule the *Payne* memorandum decision.

14

We have previously held that supervised release and registration requirements for convicted sex offenders do not violate the ex-post facto clauses of the West Virginia and United States constitutions, as the aforementioned requirements are civil in nature, rather than punitive, and carry with them a legislative intent of supervision for the purposes of public safety. *See generally Hensler v. Cross*, 210 W. Va. 530, 558 S.E.2d 330 (2001); *Haislop v. Edgell*, 215 W. Va. 88, 593 S.E.2d 839 (2003). Further, we have also found that the increased registration and supervision requirements have not impacted procedural due process safeguards, or invoked consideration under constitutional protections against cruel and unusual punishment or double jeopardy. *See generally State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011); *State v. Hargus*, 232 W. Va. 735, 753 S.E.2d 893 (2013). In fact, in his petition, petitioner concedes that unsuccessful ex post facto challenges have previously been made to the West Virginia Sex Offender Registration Act. In making his argument, petitioner relies on rulings from other states interpreting their own reporting and registration statutes. This Court, however, does not find these authorities persuasive and, based upon West Virginia jurisprudence, finds that petitioner is entitled to no relief.

*Id*. at *3.

The analysis and law regarding the supervised release statute contained within the *Howard C.* memorandum decision is incorrect. As has been clear since the enactment of the supervised release statute, and which this Court recognized in *James*, the language of West Virginia Code § 62-12-26 is punitive, not regulatory and, consequently, ex post facto principles may be implicated under the application of the supervised release statute to the facts of any given case. We, therefore, expressly overrule the memorandum decision in *Howard C.* only insofar as that decision directly conflicts with our established law

15

concerning the application of ex post facto principles to the provisions of West Virginia Code § 62-12-26 and the signed opinion issued in the case sub judice.[14]

We also find it necessary to address the language of West Virginia Code § 62-12-26 to the extent that it expressly sets forth that "any defendant convicted after the effective date" is subject to the imposition of a term of extended supervised release. *Id*. As discussed *supra*, "a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." *Adkins,* 164 W. Va. at 292, 262 S.E.2d at 885, Syl. Pt. 1, in part. Consequently, as written, the statute has the potential to be violative of an individual's constitutional rights under the ex post facto clause found in both the West Virginia and United States Constitutions if the individual committed the offense prior to the effective date identified by the statute. For purposes of assessing constitutional rights under the ex post facto clause of any penal statute intended to punish a person, the triggering date is the date of the offense. In light of the confusion caused by the language of the statute, we now hold that in order to avoid the constitutional prohibition against ex post facto laws, West Virginia Code § 62-12-26 must not be applied to those individuals who committed any of the enumerated sex offenses set forth in the supervised release statute prior to the date the

---

[14]Upon being apprised of the Court's decision herein, counsel in *Howard C*. may proceed as they deem appropriate to correct the period of supervised release that was imposed in that case, such as seeking relief pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure.

16

supervised release statute became effective regardless of any contrary language contained in West Virginia Code § 62-12-26.[15]

Now we turn to the law set forth herein and its application to the Petitioner's case. Initially, we note that the Petitioner failed to object before the circuit court to any error concerning his constitutional rights under the ex post facto clause and failed to argue the issue on appeal. These failures, however, do not mean that the Petitioner waived his constitutional rights afforded to him by the ex post facto clause nor does it preclude us from examining an issue under a plain error analysis. We previously held that "[t]his Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error." Syl. Pt. 1, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998). Further, regarding the Petitioner's failure to bring an error of constitutional magnitude before the Court, we held in syllabus point eight of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995):

> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely

---

[15]We strongly encourage the Legislature to amend this statute to comport with the ex post facto clause of both the West Virginia Constitution and the United States Constitution.

17

assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

A review of the record in this case indicates that no one, not even the circuit court when it sentenced the Petitioner to supervised release, appreciated the fact that the imposition of a period of supervised release in this case had constitutional ramifications. *See* discussion *supra*. Although the circuit court raised ex post facto concerns during the sentencing hearing to correct the probationary period, it was under the mistaken impression that this Court had already decided the issue and that the ex post facto clause did not apply to the supervised release statute. This fallacy, which continued to be perpetuated in the instant appeal, is the epitome of plain error. Consequently, there was no "knowing and intentional relinquishment or abandonment of a known right" by the Petitioner in this case because no one understood or considered the Petitioner's constitutional rights under the facts of this case in the context of ex post facto law. *See id.* When considered as a forfeiture of a right under the law enunciated in *Miller*, the Petitioner's failure to timely assert his constitutional rights in this case does not extinguish the constitutional error. *See id.*

Under our law, "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Miller*, 194 W. Va. at 7,

459 S.E.2d at 118, Syl. Pt. 7.   Moreover,

> An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syl. Pt. 7, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).   Based upon the foregoing, the imposition of a twenty-year period of supervised release upon the Petitioner violated his constitutional rights under the ex post facto clause, because the sex offenses that he was convicted of were committed in 2001, which was prior to the effective date of the supervised release statute in 2003.   *See* W. Va. Code § 62-12-26.   The error was plain, unquestionably affected the Petitioner's substantial rights and "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, Syl. Pt. 7.   Accordingly, we reverse only the circuit court's imposition of a period of supervised release as part of the Petitioner's sentence and remand for entry of a new sentencing order that comports with the law enunciated in this opinion.[16]

## IV.  CONCLUSION

---

[16]We reiterate that only the supervised release portion, *see* West Virginia Code § 62-12-26, of the Petitioner's sentence is affected by our decision today.

For the foregoing reasons, the circuit court's March 10, 2015, sentencing order is reversed and the case is remanded for entry of a new sentencing order that comports with this opinion.

Reversed and remanded.