# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Arthur C.,**
**Petitioner Below, Petitioner**

**vs)  No. 18-0699** (Marshall County 17-C-167-H)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Arthur C.,[1] self-represented litigant, appeals the July 9, 2018, order of the Circuit Court of Marshall County dismissing petitioner's petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex,[2] by counsel Scott E. Johnson, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Since the filing of the appeal in this case, the superintendent at Mt. Olive Correctional Complex has changed, and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W. Va. Code § 15A-5-3.

1

is remanded to the circuit court for the appointment of counsel and an omnibus habeas corpus hearing.

In November of 2015, a Marshall County grand jury indicted petitioner on four counts of sexual abuse by a guardian (counts one through four) and five counts of first-degree sexual abuse (counts five through nine) against M.R., a minor. For counts five through eight, the indictment alleged that the sexual abuse occurred sometime between January 1, 2003, and December 31, 2007. For count nine, the indictment alleged that the sexual abuse occurred sometime between January 1, 2014, and April 23, 2015.

In a separate indictment, petitioner was charged with one count of sexual abuse by a guardian and one count of first-degree sexual abuse against M.C., also a minor. Petitioner chose to have both indictments tried together. The circuit court held petitioner's jury trial on May 16 and 17, 2016.

The evidence at trial revealed that in 1995, an Ohio court granted petitioner's wife, C.C., legal custody of M.R., and her brother, J.M.R. C.C. married petitioner in 1998 in West Virginia. The family moved to several states, including Pennsylvania, Georgia, and Ohio. However, M.R.'s school records indicate that from 1997 until 2011, M.R. predominantly resided in Marshall County, West Virginia.

M.R. testified that petitioner first sexually abused her when she was eight or nine years old, while living in Pennsylvania. M.R. testified that petitioner and C.C. held her down and that petitioner rubbed her vagina and masturbated. M.R. testified that the first time this occurred she cooperated because she did not know what was going on. M.R. stated that later, she would attempt to fight back but that C.C. or petitioner would strike her with a fiberglass CB antenna when she did.

M.R. testified that in 2003, when she was eleven years old, the family moved back to West Virginia and lived in the Nixon Ridge area of Marshall County. M.R. testified further that during this time, petitioner assaulted her every week or every other week by rubbing her vagina, performing oral sex on her, and masturbating. M.R. testified that during the weeks it occurred, it happened as many as four times per week. M.R. testified that petitioner would tell her "[y]ou're going to be mine" and that C.C. would often tell her that she was going to be petitioner's wife when she got older. M.R. further testified that the family moved to the Taylor's Ridge area of Marshall County, where the abuse continued. M.R. testified that there were a lot of people staying in that home, and as a result the abuse occurred less frequently. M.R. testified that when the abuse occurred, it would happen two or three times per week. M.R. testified that she did not tell anyone because she was scared. M.R. stated that the abuse stopped when she was fifteen, in 2007, and did not start again until she was twenty-three.

In 2007, M.C., petitioner's other victim, moved into petitioner's home with her mother A.B. A.B. was involved in a romantic relationship with petitioner and C.C. A.B. eventually moved out of the home, leaving M.C. in petitioner and C.C.'s care. M.R. testified that she took over most of the duties regarding M.C.'s care, including bathing and grooming, and taking her to school.

2

M.C. testified that petitioner sexually abused her once, in 2015, when she was eight years old, touching her vagina.

In 2015, M.R. testified that she woke and found petitioner touching her vagina. M.R. yelled, and C.C. woke up and yelled for petitioner to stop. After this incident, in March of 2015, M.R. snuck out of the home, went to a police station, and reported the sexual abuse to the Marshall County Sheriff's Department. M.R. also reported that petitioner grabbed her and asked her for a sexual favor and that when she refused, he slammed her against a wall. Based upon this complaint, petitioner was charged with domestic battery. Days later, M.R. sought and was granted an emergency domestic violence protective order against petitioner.

Detective Zachary Allman of the Marshall County Sheriff's Department investigated the sexual abuse claims. Detective Allman interviewed M.R. at the end of March of 2015, at which time M.R. disclosed the verbal, physical, and sexual abuse she experienced from petitioner and C.C. Detective Allman also arranged for M.R. to be interviewed at Harmony House, a child advocacy center. M.R. recounted the abuse to a counselor there, in an interview observed by Detective Allman. In April of 2015, Detective Allman interviewed C.C. and petitioner. C.C. denied any abuse. Petitioner initially denied the abuse but ultimately admitted that approximately one year prior, he "did rub [M.R.'s] [vagina] through a blanket." In July of 2015, Detective Allman arrested petitioner for the offense of sexual abuse by a guardian.

After M.R. reported the abuse to the sheriff's department, M.C. was removed from petitioner's home and placed in foster care. In April or May of 2015, M.C. was receiving services from a court appointed special advocate, Susan Harrison, and disclosed that petitioner touched her vagina when she was living with him. Ms. Harrison reported this disclosure to Detective Allman, who interviewed M.C. M.C. disclosed the same to Detective Allman.

Petitioner did not testify on his own behalf. Petitioner was convicted on all counts. In Case No. 15-F-65, where M.R. was listed as the victim, petitioner was sentenced to four concurrent terms of ten to twenty years of incarceration for his conviction of sexual abuse by a guardian pursuant to West Virginia Code § 61-8D-5(a) and four concurrent terms of five to twenty-five years of incarceration for his convictions of first-degree sexual abuse pursuant to West Virginia Code § 61-8B-7(c). For the remaining conviction for first-degree sexual abuse, petitioner was sentenced to one to five years of incarceration, pursuant to West Virginia Code § 61-8B-7(b), because M.R. was over twelve years of age at the time of that abuse.[3]

---

[3] Amended as of October 1, 2006, West Virginia Code § 61-8B-7 provides:

(a) A person is guilty of sexual abuse in the first degree when:

(1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion; or

(continued . . .)

In Case No. 15-F-66, where M.C. was listed as the victim, petitioner was sentenced to ten to twenty years of incarceration for his conviction of sexual abuse by a guardian pursuant to West Virginia Code § 61-8D-5(a) and five to twenty-five years of incarceration for his conviction of first-degree sexual abuse pursuant to West Virginia Code § 61-8B-7(c). The sentences in the two cases were ordered to run consecutively for an aggregate sentence of thirty-one to ninety-five years of incarceration. Petitioner filed an appeal in *State v. [Arthur] C.*, No. 16-0656, 2017 WL 2210147 (W. Va. May 19, 2017) (memorandum decision). This Court affirmed petitioner's convictions, finding sufficient evidence of his guilt. *Id.* *3-4.

On August 11, 2017, petitioner filed a petition for a writ of habeas corpus in the circuit court, raising the following grounds for relief: (1) improper admission of res gestae evidence; (2) erroneous instruction regarding use of res gestae evidence; (3) ex parte communication between the court and the jury during deliberations; (4) unconstitutional indictment; (5) unconstitutionality of West Virginia Code § 61-8D-5(a); (6) retroactive application of the 2006 version of West Virginia Code § 61-8B-7 in violation of the ex post facto clause; and (7) ineffective assistance of counsel (both at trial and on appeal).[4] By order entered July 9, 2018, the circuit court dismissed the habeas petition:

> (2) Such person subjects another person to sexual contact who is physically helpless; or
>
> (3) Such person, being fourteen years old or more, subjects another person to sexual contact who is younger than twelve years old.
>
> (b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in a state correctional facility not less than one year nor more than five years.
>
> (c) Notwithstanding the provisions of subsection (b) of this section, the penalty for any person violating the provisions of subsection (a) of this section who is eighteen years of age or older and whose victim is younger than twelve years of age, shall be imprisonment for not less than five nor more than twenty-five years and fined not less than one thousand dollars nor more than five thousand dollars.

[4]On appeal, petitioner further alleges that his arraignment was constitutionally defective, and in so alleging, invokes this Court's original jurisdiction. However, this case arises under our appellate jurisdiction, not our original jurisdiction. Therefore, we decline to address this issue. *See Watts v. Ballard*, 238 W. Va. 730, 735 n.7, 798 S.E.2d 856, 861 n.7 (2017) (stating that "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance") (quoting Syl. Pt. 2, *Sands v. Sec. Trust Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958)).

4

Petitioner filed his ***Petition For Writ of Habeas Corpus*** wherein he alleges in the 55-page filing various and sundry grounds for relief. The undersigned presided over the litigation that ultimately culminated in [p]etitioner's complained-of convictions, sentences[,] and current incarceration. [Citation to *Arthur C.* omitted.]

Based upon the undersigned's comprehensive familiarity with the underlying criminal proceedings, the breadth of evidence presented at trial against [p]etitioner, as well as complete re-review of the underlying criminal case files, this Court **DOES NOT FIND** that probable cause exists to believe that [p]etitioner may be entitled to any relief whatsoever. [Citation omitted.]

Accordingly, it is the **ORDER** of this [c]ourt that the relief sought is **DENIED**[,] and the action is **DISMISSED.**

(Emphasis in original).

Petitioner now appeals the circuit court's July 9, 2018, order. In Syllabus Points 1 and 2 of *Watts v. Ballard*, 238 W. Va. 730, 798 S.E.2d 856 (2017), we held:

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review. Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

"West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined." Syl. Pt. 1, *State ex rel. Watson v. Hill*, 200 W. Va. 201, 488 S.E.2d 476 (1997).

On appeal, petitioner argues that the circuit court erred in dismissing his habeas petition without the appointment of counsel and an evidentiary hearing. Petitioner further argues that we have previously held that a claim of ineffective assistance of counsel often must be developed in a habeas proceeding. *See* Syl. Pt. 10, in part, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992) (holding that "[t]he prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied"); *Losh v. McKenzie*, 166 W. Va. 762, 767, 277 S.E.2d 606, 610 (1981) (stating that certain issues, "such as incompetency of counsel, of which [the inmate] would have been unaware at trial, must be litigated in a collateral proceeding").

Based on our review of the circuit court's July 9, 2018, order, we find that the circuit court failed to make findings regarding each contention raised by petitioner, but set forth the grounds on

which it dismissed the habeas petition: (1) that the presiding judge was sufficiently familiar with petitioner's case, given that the judge also presided in the underlying criminal proceeding, to rule on the petition summarily; and (2) that there was no probable cause to believe that petitioner was entitled to "any relief whatsoever." We find that neither ground justified the dismissal of the habeas petition.

We note that it is well established that "'"[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).' Syl. Pt. 2, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004)." Syl. Pt. 3, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016). In the instant case, however, in keeping with our longstanding practice of holding pro se pleadings and motions "to less stringent standards than those drafted by lawyers," *James M.B. v. Carolyn M*., 193 W. Va. 289, 294 n.9, 456 S.E.2d 16, 21 n.9 (1995), we conclude that the petitioner's allegations are sufficient to require a hearing on the ineffective assistance claim, and accordingly, the circuit court was not justified in summarily dismissing the habeas petition. The court's ruling was based on the fact that it was familiar with the case, having presided in the underlying criminal proceeding; however, some of the allegations made by the petitioner call into question "the motive and reason behind [counsel's] trial behavior," a matter that cannot be determined where "the most significant witness, the trial attorney, has not been given the opportunity to explain." *Watson*, 200 W. Va. at 204, 448 S.E.2d at 479 (quoting *State v. Miller*, 194 W. Va. 3, 14-15, 459 S.E.2d 114, 125-26 (1995)).

We further determine that the circuit court's finding that petitioner was not entitled to "any relief whatsoever" was erroneous because of respondent's concession that petitioner's first four sentences for first-degree sexual abuse involving M.R. likely violate the ex post facto clause,[5] explaining:

> Established principles suggest that [petitioner] cannot be sentenced under [West Virginia Code § 61-8B-7(c)]. M.R.'s birthday [was in] 1992, so she was younger than 12 no later than . . . 2004[.] Therefore[,] any conduct that might have triggered the . . . sentence [set forth in West Virginia Code § 61-8B-7(c)] occurred before October 1, 2006, the effective date of [West Virginia Code § 61-8B-7(c)].

---

[5]In Syllabus Point 2 of *State v. Deel*, 237 W. Va. 600, 788 S.E.2d 741 (2016), we held:

> "Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W. Va. 292, 262 S.E.2d 885 (1980).

Given that respondent concedes that petitioner is likely entitled to relief on one of his claims, and petitioner's allegations are sufficient to require a hearing on another claim, we find that the circuit court abused its discretion in dismissing the habeas petition.

For the foregoing reasons, we reverse the circuit court's July 9, 2018, order dismissing petitioner's petition for a writ of habeas corpus and remand this case for the appointment of counsel and an omnibus habeas corpus hearing.

Reversed and Remanded with Directions.

**ISSUED**: July 30, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison